IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FAYNE MARIE VETTERNECK,

                Plaintiff,

v.                                                             OPINION and ORDER

MARTIN O'MALLEY,                                           23-cv-95-jdp
Commissioner of the Social Security Administration,

                Defendant.[1]

---

Plaintiff Fayne Marie Vetterneck seeks judicial review of a final decision of defendant Martin O'Malley, Commissioner of the Social Security Administration, finding that Vetterneck was not disabled within the meaning of the Social Security Act. Vetterneck contends that administrative law judge (ALJ) Michael Schaefer did not adequately consider the medical opinions in the record. The court concludes that the ALJ erred by failing to consider much of the report of examining psychologist Courtney Derus, so the court will remand the case for a reevaluation of the report and the evidence cited in it.

BACKGROUND

In 2014, Vetterneck was awarded benefits for disability beginning in 2005. R.17.[2] That decision was based on a finding that Vetterneck's depression met the requirements for Medical Listing 12.04. *Id.* But the agency discontinued benefits in 2019 for lack of evidence when

---

[1] The court has amended the caption to reflect O'Malley's appointment as Commissioner. *See* Fed. R. Civ. P. 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 4.

Vetterneck failed to meet with agency staff or provide requested information. R. 100–13. Vetterneck then requested and received a hearing before an ALJ. In a July 2022 decision, the ALJ found that Vetterneck suffered from the following severe impairments related to her mental health: bipolar disorder, depression, anxiety, post-traumatic stress disorder, and substance abuse disorder. R. 17.[3] In light of these impairments, the ALJ found that Vetterneck retained the residual functional capacity (RFC) to perform work that meets the following limitations:

- Simple instructions

- Routine and repetitive tasks

- No tasks requiring more than a GED Reasoning level, Math level or Language level of more than two

- Few, if any, changes in work duties or expectations

- No fast-paced production quota or rate

- No more than occasional, brief, and superficial interactions with the public or coworkers

- No more than occasional interactions with supervisors

- No direct customer service

R. 21. Relying on the testimony of a vocational expert, the ALJ found that Vetterneck was not disabled after September 30, 2019, because her condition had improved enough to enable her to perform a significant number of jobs that are available in the national economy, including as a housekeeping cleaner, a laundry worker, and a router. R. 30.

---

[3] The ALJ also found several severe physical impairments, but those are not relevant to Vetterneck's appeal.

2

Vetterneck now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Vetterneck challenges the way that the ALJ handled the medical opinion evidence in two ways: (1) the ALJ disregarded significant portions of a report submitted by psychologist Courtney Derus, who evaluated Vetterneck in November 2021; and (2) the ALJ should have discussed a 2014 opinion from state-agency psychologist Roger Rattan.[4] The parties agree that Vetterneck's claim is governed by the regulations that were in effect before March 27, 2017, because she filed her original claim before then.

**A. Courtney Derus**

Derus evaluated Vetterneck once at the request of Vetterneck's counsel, and Derus issued a 14-page report on her findings. Derus's report includes the following information: (1) a summary of Vetterneck's symptoms; (2) her social and medical history; (3) the results of a mental status exam; (4) the results of four psychological assessments; (5) a "clinical summary";

---

[4] Vetterneck raises a third issue, which is that the court should reject any harmless error argument asserted by the government that relies on the opinions of other medical sources. Dkt. 9, at 36–46. The government doesn't rely on harmless error, so the court need not consider that issue.

(6) diagnoses for bipolar disorder and post-traumatic stress disorder; and (7) eight "recommendations." The last recommendation was actually a conclusion: "It is this writer's opinion that Ms. Vetterneck does not appear capable of managing stable employment due to her significant psychological issues. It is necessary for her safety and well-being, that she invest her time and energy into psychological treatment." R. 854.

The ALJ concluded that Derus's report was not persuasive for two reasons: (1) Vetterneck obtained the opinion for the purpose of supporting her disability claim; and (2) Derus's conclusion that Vetterneck could not work was not helpful because it did not identify any specific functional limitations. As Vetterneck points out, the court of appeals has rejected the ALJ's first reason. An expert who is hired by the claimant may be motivated to offer opinions that favor the claimant, but the ALJ may not simply assume that is so. *Punzio v. Astrue*, 630 F.3d 704, 712–13 (7th Cir. 2011). Instead, the ALJ must evaluate the opinion using the criteria in 20 C.F.R. § 404.1527. *Id.* The ALJ may not reject an opinion simply because of speculation about potential bias.

The ALJ's second reason for rejecting Derus's opinion is on stronger footing. A determination regarding whether a claimant is disabled is reserved to the commissioner. 20 C.F.R. § 1527(d)(1). That being said, the court of appeals has clarified that only the legal determination regarding whether a claimant qualifies for disability benefits is reserved to the commissioner; a medical source may offer an opinion about the claimant's ability to work. *See Garcia v. Colvin*, 741 F.3d 758, 760–61 (7th Cir. 2013). That is essentially the opinion that Derus offered.

In any event, Derus's report was more than a bottom-line conclusion. It included the results of a mental status exam and four psychological assessments, some of which were based

4

on more than just Vetterneck's subjective symptoms. It also included multiple opinions and observations about the severity of Vetterneck's symptoms, including the following:

- Vetterneck's "fund of knowledge was poor." R. 848.

- Vetterneck had "poor" concentration during her mental status examination. R. 848.

- Vetterneck received a score of 16 on the PHQ-9 assessment, which "places her in the moderately severe depressive range." R. 848.

- Vetterneck's "clinical profile is marked by significant elevations across several scales, indicating a broad range of clinical features and increasing the possibility of multiple diagnoses. Profile patterns of this type are usually associated with marked distress and severe impairment in functioning." R. 849.

- Vetterneck "will tend to display her anger readily when it is experienced; she may be verbally aggressive at relatively low levels of provocation. More extreme displays of anger, including damage to property and threats to assault others, would not be unexpected." R. 851.

- Vetterneck's "immediate memory was intact, but her delayed memory was very poor. She was not able to freely recall any of the three objects after a two-minute delay." R847. She "demonstrated significant impairments with memory during the examination." R. 853.

- Vetterneck has "problematic personality characteristics that may result in heightened emotional responsiveness, emotional lability, extreme mood swings, and poorly controlled anger." R. 853.

If credited, these statements could affect a determination on Vetterneck's ability to sustain full-time work. But the ALJ did not explain how or whether he considered any of the above findings and observations by Derus. Under the regulations that governed the ALJ's decision, the ALJ was required to consider statements by medical sources that "reflect judgments about the nature and severity of [the claimant's] impairment(s)," along with "the kinds and extent of examinations and testing the source has performed." 20 C.F.R.

5

§ 404.1527(a)(1) and (c)(2)(ii). The above statements are among the things that § 404.1527 required the ALJ to consider.

The commissioner says that "a closer reading" of the ALJ's decision shows that he did consider the tests and examination that Derus performed. Dkt. 12, at 10. But the portion of the decision that the commissioner cites is simply a summary of the examination and a list of the tests performed. R. 26. The ALJ did not build a logical bridge between the evidence and his conclusions, as he is required to do. So the court will remand the case to give the ALJ an opportunity to reconsider Derus's report.

**B.  Roger Rattan**

Roger Rattan was a state-agency psychologist who conducted a review of Vetterneck's medical records in October 2014. He concluded that Vetterneck satisfied Medical Listing 12.04 based on limitations in handling work stress and adapting to change caused by Vetterneck's depression. R. 82. Vetterneck contends that the ALJ erred by failing to discuss Rattan's opinion in his 2022 decision, citing 20 C.F.R. § 404.1527(c), 20 C.F.R. § 404.1594, and POMS DI 28005.015A3.

None of the rules cited by Vetterneck required the ALJ to discuss opinions from 2014. Section 404.1527(c) states that "we will evaluate every medical opinion we receive." But the agency *did* evaluate Rattan's opinion—in 2014 when the agency awarded benefits to Vetterneck. The ALJ reviewed new opinions when he was reevaulating Vetterneck's abilities as of September 30, 2019. Rattan's 2014 opinion would not have been useful in determining whether Vetterneck's condition had improved since then.

Section 404.1594 outlines the process for "determin[ing] whether [a claimant's] disability continues or ends." Vetterneck says that the regulation requires the ALJ to compare

6

the new evidence with the "most recent favorable medical decision," which Vetterneck says was Rattan's opinion.

Vetterneck is misreading the regulation. Section 404.1594(b)(7) states that the ALJ will "compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled . . . to the medical severity of that impairment(s) at that time." The regulation defines "most recent favorable medical decision" as "the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final." *Id.* This language shows that "most recent favorable medical decision" is a favorable decision by the commissioner, not an opinion from a medical source. And the regulation instructs the ALJ to compare the severity of the claimant's medical impairments at the two points in time to determine whether there has been improvement. Section 404.1594 is not directing the ALJ to compare old and new medical opinions side by side.

POMS DI 28005.015A3 does direct the ALJ to review the old and new evidence. But the POMS, or the Program Operations Manual System, does not have the force of law. *O'Donnell v.* Saul, 983 F.3d 950, 958 (7th Cir. 2020). Regardless, the provision Vetterneck cites explains that the purpose of comparison is simply to determine "whether there is a decrease in the medical severity of the impairment(s)." The manual doesn't require the ALJ to discuss old medical opinions or explain why they are not persuasive. In this case, the ALJ did conduct a general comparison of the evidence in 2014 and the evidence in 2022. He explained that he did not believe that Vetterneck's depression continued to be disabling primarily based on the lack of treatment she had received since 2019 and her failure to discuss mental health

7

symptoms during medical appointments that she did attend. R. 22–23. That was enough to satisfy the rule.

ORDER

IT IS ORDERED that the decision denying disability benefits to plaintiff Fayne Marie Vetterneck is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered March 28, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge